IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Stacie Holt and Sarah Day, | |
| *On behalf of themselves and those similarly situated*, | Case No. 1:19-cv-79 |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| Glass Family Pizza, Inc., John Glass, and John Doe 1-10, | Jury Demand Endorsed Hereon |
| Defendants. | |

CLASS AND COLLECTIVE ACTION COMPLAINT

1.     Stacie Holt and Sarah Day, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Glass Family Pizza, Inc., John Glass, and John Does 1-10 ("Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages and overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act"), and O.R.C. § 2307.60.

2.     Defendants operate approximately 39 Domino's Pizza franchises in Ohio and Kentucky (the "Glass Domino's" stores or restaurants).

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the Ohio Constitution, and the Ohio Prompt Pay Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, Section 34a, and the Prompt Pay Act.

5.      The delivery drivers at the Glass Domino's stores, as defined below, including Plaintiffs, have been subject to the same or similar employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers, as defined below, who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.      Plaintiffs also bring this action on behalf of herself and similarly situated current and former delivery drivers, as defined below, in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, and O.R.C. § 2307.60.

### Jurisdiction and Venue

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' Ohio law claims.

2

10.    Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiffs**

**Stacie Holt**

11.    Plaintiff Stacie Holt is a resident of Ohio and, at all times material herein, worked within the boundaries of Southern District of Ohio.

12.    Stacie Holt was an "employee" of all of the Defendant as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

13.    Stacie Holt has given written consent to join this action.

**Sarah Day**

14.    Plaintiff Sarah Day is a resident of Ohio and, at all times material herein, worked within the boundaries of Southern District of Ohio.

15.    Sarah Day was an "employee" of all of the Defendant as defined in the FLSA, Section 34a, and the Ohio Prompt Pay Act.

16.    Sarah Day has given written consent to join this action.

**Defendants**

**Glass Family Pizza, Inc.**

17.    Defendant Glass Family Pizza, Inc. is a domestic corporation authorized to do business under the laws of Ohio.

3

18. Glass Family Pizza, Inc. is the corporate entity that appears on Plaintiffs' paystubs for the work she completed for Defendants.

19. Glass Family Pizza, Inc. is owned and operated by John Glass.

20. Glass Family Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

21. Glass Family Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

22. At all relevant times, Glass Family Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

23. Glass Family Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, Section 34a, and the Ohio Prompt Pay Act.

24. At all relevant times, Glass Family Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25. Glass Family Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**John Glass**

26. Defendant John Glass is an owner and operator of the Glass Domino's restaurants and Glass Family Pizza, Inc.

27. John Glass founded Glass Family Pizza, Inc.

28. John Glass is the president of Glass Family Pizza, Inc.

4

29.     John Glass is individually liable to Glass Domino's' delivery drivers under the definitions of "employer" set forth in the FLSA and Section 34a because he owns and operates the Glass Domino's stores, serves as a manager and/or member of Glass Family Pizza, Inc., ultimately controls significant aspects of Glass Family Pizza, Inc.'s day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

30.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had financial control over the operations at each of the Glass Domino's stores.

31.     At all relevant times, as owner and operator of Glass Family Pizza, Inc., John Glass has a role in significant aspects of the Glass Domino's stores' day to day operations.

32.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had control over the Glass Domino's stores' pay policies.

33.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had power over personnel and payroll decisions at the Glass Domino's stores, including but not limited to influence of delivery driver pay.

34.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to hire, fire and discipline employees, including delivery drivers at the Glass Domino's stores.

35.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to stop any illegal pay practices that harmed delivery drivers at the Glass Domino's stores.

5

36.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to transfer the assets and liabilities of Glass Family Pizza, Inc.

37.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to declare bankruptcy on behalf of Glass Family Pizza, Inc.

38.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to enter into contracts on behalf of each of the Glass Domino's stores.

39.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass has had the power to close, shut down, and/or sell each of the Glass Domino's stores.

40.     At all relevant times, by virtue of his role as owner and operator of Glass Family Pizza, Inc., John Glass had authority over the overall direction of each of Glass Domino's stores and was ultimately responsible for their operations.

41.     The Glass Domino's stores function for John Glass's profit.

42.     John Glass has influence over how the Glass Domino's stores can delivery run more profitably and efficiently.

**John Doe 1-10**

43.     Upon information, there are other Defendants who own an interest and/or have operational control over the Glass Domino's stores that also qualify as Plaintiff's "employer" under the FLSA.

6

44.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

### FACTS

### Class-wide Factual Allegations

45.     During all relevant times, Defendants have operated the Glass Domino's stores.

46.     Some or all of the Glass Domino's stores employs delivery drivers.

47.     Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Glass Domino's stores who were paid a wage rate of $8.30 per hour or less for time spent completing deliveries (hereinafter, "delivery drivers").

48.     All delivery drivers employed at the Glass Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

49.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Glass Domino's stores building pizza boxes, cleaning, preparing pizza and other food items, and completing other duties inside the restaurant as necessary.

50.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage or minimum wage minus a tip credit for the hours they worked while completing deliveries.

51.     At all relevant times, Plaintiffs and similarly situated delivery drivers have been paid minimum wage or slightly above minimum wage for the hours they worked inside the restaurant.

52.     Plaintiffs and similarly situated delivery drivers use PULSE to clock in and out and to track the deliveries they complete.

7

53.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

54.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

55.     Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing charges, registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

56.     Some of the Glass Domino's stores do not track or record their delivery drivers' actual expenses.

57.     None of the Glass Domino's stores track or record their delivery drivers' actual expenses.

58.     Some of the Glass Domino's stores do not reimburse delivery drivers for their actual expenses.

59.     None of the Glass Domino's stores reimburse delivery drivers for their actual expenses.

60.     Some of the Glass Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

61. None of the Glass Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

62. Some of the Glass Domino's stores do not reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

63. None of the Glass Domino's stores reimburse delivery drivers at a reasonable approximation of the delivery drivers' expenses.

64. Plaintiffs and similarly situated delivery drivers receive a per-delivery reimbursement payment that amounts to less than the IRS standard business mileage rate for each mile they drive while completing deliveries for Glass Domino's.

65. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a. 2016: 54 cents/mile
    b. 2017: 53.5 cents/mile
    c. 2018: 54.5 cents/mile
    d. 2019: 58 cents/mile

66. The delivery drivers at Glass Domino's have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

67. As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Ohio law.

68. At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers, as defined above, at the Glass Domino's stores.

69. All of Defendants' delivery drivers had similar experiences to that of Plaintiffs. They completed similar job duties, were subject to the same reimbursement policy; received

similar reimbursement payments; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate or a tipped wage rate before deducting unreimbursed vehicle costs.

70. Regardless of the precise amount of the reimbursement formula at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

71. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

72. Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

73. Defendants have willfully failed to pay federal and Ohio state minimum wage to Plaintiffs and similarly situated delivery drivers at the Glass Domino's stores.

**Plaintiffs' Individual Factual Allegations**

74. Plaintiffs were subjected to all of the employment policies and practices described above.

75. Stacie Holt worked for Defendants from September 2018 to January 2019 as a delivery driver at their Bethel, Ohio location.

10

76.     Stacie Holt was paid minimum wage while working inside the store, and a tipped wage rate of $6.30 per hour while on the road delivering food.

77.     Stacie Holt drove approximately 8-10 miles round trip per delivery.

78.     Stacie Holt was reimbursed approximately $1.60 per delivery when her employment began. By the time she left her employment, her reimbursement rate had been increased to $1.79 per delivery.

79.     Stacie Holt was not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

80.     During her employment with Defendants, Defendants failed to adequately reimburse Stacie Holt for automobile and other job-related expenses.

81.     Stacie Holt regularly mad approximately 2-3 deliveries per hour during the hours she worked as a delivery driver.

82.     Defendants' average effective reimbursement rate when Stacie Holt began her employment was $.177 per mile ($1.60 / 9 miles per delivery).

83.     In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Stacie Holt's automobile expenses, every mile driven on the job decreased her net wages by approximately $.368 ($.545 - $.177) per mile. Considering Plaintiff's estimate of about 9 average miles per delivery, Defendants under-reimbursed her about $3.31 per delivery ($.368 x 9 average miles).

84.     Thus, Stacie Holt consistently "kicked back" to Defendants approximately $8.28 per hour ($3.31 per delivery x 2.5 deliveries per hour).

85.     Defendants have failed to properly take a tip credit from Stacie Holt's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Stacie Holt they would be taking.

86.     Defendants failed to pay Stacie Holt at all for an approximately 4-hour orientation session.

87.     As a result of the above, Defendants have failed to pay Stacie Holt minimum wage as required by law.

88.     Sarah Day worked for Defendants from December 2018 to January 2019 as a delivery driver at their Bethel, Ohio location.

89.     Sarah Day was paid minimum wage while working inside the store, and a tipped wage rate of $6.30 per hour while on the road delivering food.

90.     Sarah Day drove approximately 8-10 miles round trip per delivery.

91.     Sarah Day was reimbursed approximately $1.79 per delivery.

92.     Sarah Day was not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

93.     During her employment with Defendants, Defendants failed to adequately reimburse Sarah Day for automobile and other job-related expenses.

94.     Sarah Day regularly mad approximately 2-3 deliveries per hour during the hours she worked as a delivery driver.

95.     Defendants' average effective reimbursement rate when Sarah Day began her employment was $.198 per mile ($1.79 / 9 miles per delivery).

96.     In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Stacie Holt's automobile expenses, every mile driven on the job decreased her net wages by approximately $.347 ($.545 - $.198) per mile. Considering Plaintiff's estimate of about 9 average miles per delivery, Defendants under-reimbursed her about $3.12 per delivery ($.347 x 9 average miles).

97.     Thus, Sarah Day consistently "kicked back" to Defendants approximately $7.81 per hour ($3.12 per delivery x 2.5 deliveries per hour).

98.     Defendants have failed to properly take a tip credit from Sarah Day's wages because, after accounting for unreimbursed expenses, Defendants have taken more of a tip credit than they informed Sarah Day they would be taking.

99.     Defendants failed to pay Sarah Day at all for an approximately 4-hour orientation session.

100.     As a result of the above, Defendants have failed to pay Sarah Day minimum wage as required by law.

### Collective Action Allegations

101.     Plaintiffs bring the First Count on behalf of themselves and:

All similarly situated current and former delivery drivers employed at the Glass Domino's restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who were paid a wage rate of $8.30 per hour or less

13

for time spent completing deliveries, and who elect to opt-in to this action (the "FLSA Collective")

102.    At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

103.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

104.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

105.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

106.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

107.    The FLSA Collective members are readily identifiable and ascertainable.

108.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

All current and former delivery drivers employed by Defendant at Glass Domino's stores in the State of Ohio between the date three years prior to the filing of the original complaint and the date of final judgment in this matter who are/were paid

14

a wage rate of $8.30 per hour or less for time spent completing deliveries ("Rule 23 Class").

110. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

111. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

112. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

113. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

114. Notice can be provided by means permissible under Rule 23.

115. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

116. There are more than 50 Rule 23 Class members.

117. Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

118. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and O.R.C. § 4113.15.

15

119.    Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

120.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

121.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

122.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

123.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

124.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

   a. Whether Plaintiffs and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage and overtime;

   b. Whether Plaintiffs and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

16

c.  Whether Plaintiffs and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

d.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members for their actual expenses;

e.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

f.  Whether Defendants reimbursed Plaintiffs and the Rule 23 Class members based on a reasonable approximation of the expenses they incurred;

g.  Whether Defendants failed to pay Plaintiffs and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15, and, if so, whether the wages owed are "in dispute"; and

h.  The nature and extent of class-wide injury and the measure of damages for those injuries.

125.  In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

## Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

126.  Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

127.  Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

128.     Defendants failed to properly claim a tip credit from the wages of Plaintiffs and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

129.     Defendants paid Plaintiffs and the FLSA Collective at or close to minimum wage as an hourly wage for all hours worked.

130.     Defendants required and continue to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

131.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

132.     Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

133.     As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

134.     Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

135.     Defendants paid Plaintiffs and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

136.   Defendants ostensibly paid Plaintiffs and the Rule 23 Class at or close to minimum wage for the hours they worked.

137.   Because Defendants required Plaintiffs and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiffs and the Rule 23 Class minimum wage.

138.   By not paying Plaintiffs and the Rule 23 Class at least minimum wage for each hour worked, Defendants has violated the Ohio Constitution, Article II, § 34a.

139.   As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

140.   Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

141.   During all relevant times, Defendants were covered by O.R.C. § 4113.15, and Plaintiffs and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

142.   O.R.C. § 4113.15(A) requires that Defendants pay Plaintiffs and the Rule 23 Class all wages on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

19

143.    By failing to pay Plaintiffs and the Rule 23 Class all wages due to them under the FLSA and Ohio Constitution, Defendants have also violated the Ohio Prompt Pay Act.

144.    Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

145.    In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

146.    As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

147.    Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

148.    The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

149.    By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiffs and the Rule 23 Class have been injured as a result.

150.    O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

151.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiffs Stacie Holt and Sarah Day pray for all of the following relief:

A.      Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B.      Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations for Plaintiffs and the FLSA Collective.

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiffs as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G.      An award of damages under Section 34a, based on Defendants' failure to pay wages, calculated as an additional two times of back wages.

H.      Liquidated damages under O.R.C. § 4113.15.

I.      Compensatory and punitive damages under O.R.C. § 2307.60.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK &
DEMARCO, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK &
DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
www.billerkimble.com

*Counsel for Plaintiff*

22

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Andrew Kimble
Andrew Kimble