IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| Stacie Holt, *et al.*, <br><br> Plaintiff, <br><br> v. <br><br> Glass Family Pizza, Inc., *et al.*, <br><br> Defendants. | Case No. 1:19-cv-79 <br><br> Judge Timothy S. Black |

PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiffs Stacie Holt, Sarah Day, Amanda Papia, Shelby Piercefield, Eric Seigneur, Allyson Leavitt, Scott Davis, Jason Gruener, Brandon Wagner, Stephen Eckstein, Bailey Vannelli, Chaz Jones, Dorthy Lorenz, Josh Duncan, Paul Elliott, Brandon Barekman, William Bailey, Holly Chenault, Rachel Vineyard, Todd Rush, Dylan Huth, William Alsup, Katrina Voorhees, Ryan Miles, Frank Ellman, Michael Sexton, Whitney Kilgore, Josh Bailey, Alex Fechtelkotter, James Hurtt, Samuel McIntosh, David Stammer, Daniel Vickers, Shawn Watson, Jarvis Tolliver, Brandon Browning, Rebecca Deaton, Bobby Mosely, Michael Roberts, DeEric Avery, Samantha Philhower, and Brittany Knight (collectively herein, "Plaintiffs" or "Delivery Drivers") ask that the Court (1) grant final approval to each of the parties' individual Settlement Agreements entered into with Defendants Glass Family Pizza, Inc. and John Glass, filed previously (Doc. 12), and (2) dismiss this case with prejudice upon payment of settlement funds and without costs and fees except as provided in the parties' Settlement Agreement. Defendants do not oppose this motion.

1

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S RENEWED UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

**1. Introduction**

This matter comes before the Court in a slightly unusual posture. This case was originally filed as a class and collective action on January 30, 2019 (Doc. 1) alleging mileage under-reimbursement with consent to join forms for Stacie Holt, Sarah Day, Shelby Piercefield, and Amanda Papia. *See* Doc. 1-1, Doc. 1-2, Doc. 5, and Doc. 8. Shortly thereafter, Defendants produced arbitration agreements for each Plaintiff, and Plaintiffs Holt, Day, Piercefield, and Papia agreed to proceed to individual arbitration. While the parties were negotiating a resolution to the claims of the original Plaintiffs, 38 additional current and former delivery drivers (from Ohio and Kentucky) retained Plaintiffs' counsel and asserted the same mileage under-reimbursement claims against Defendants.

The parties have now reached voluntary settlements of each of these individual wage claims. As is required by the FLSA, the parties now seek the approval of each of those settlements from this District Court. In total, the parties ask the Court to approve 42 settlement agreements. Each settlement is fair, adequate, and reasonable. Upon Defendants' final payment of settlement funds, the parties ask that this Court dismiss this case with prejudice.

**2. Background of the Lawsuit**

Plaintiffs delivered pizzas for Domino's franchised restaurants owned and operated by Defendant Glass Family Pizza, Inc. and John Glass in Southwest Ohio and Northern Kentucky. Delivery Drivers originally brought this case on behalf of themselves and similarly situated drivers to recover unpaid wages under the Fair Labor Standards Act ("FLSA") and Ohio law. However,

Defendants allege that because each driver had executed an arbitration agreement with a class action waiver, they could not proceed collectively as alleged in the Complaint.

The claim in the arbitration proceedings is that Defendants are alleged to have paid Delivery Drivers at or below the applicable minimum wage and, at the same time, required Delivery Drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc. Plaintiffs allege that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35. Here, Delivery Drivers allege that they were paid a "tip credit minimum wage rate while on the road making deliveries, and received a flat reimbursement payment for each delivery they completed, such as $1.60 or $1.79 per delivery." *See, e.g.,* Doc. 1.

Delivery Drivers allege that this policy violates the FLSA and the relevant Ohio and Kentucky wage and hour laws because Defendants are required to reimburse either for actual expenses incurred, with corresponding records kept of those expenses and reimbursements, or at the IRS standard business mileage rate (which was between $0.535 and $0.58 during the relevant time period). *See, e.g.,* DOL Handbook § 30c15(a); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018).

In contrast, Defendants deny Delivery Drivers' individual claims entirely, deny any wrongdoing whatsoever, and assert that Defendants compensated each Delivery Driver in compliance with the FLSA and the relevant Ohio and Kentucky wage and hour laws at all times. Defendants claim that they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles, have adequately reimbursed the Delivery Drivers for all of

4

their expenses, and have at all times paid them properly. *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721 (E.D. Mo. 2015) (citing 29 C.F.R. §778.217).

Shortly after this case was filed, Defendants moved to compel the claims of Plaintiffs Holt, Day, Piercefield, and Papia individually to arbitration. The parties stipulated to arbitration and were able to resolve the claims of Holt, Day, Piercefield, and Papia in April 2019. While these settlements were being negotiated and finalized, 38 other Delivery Drivers asserted mileage under-reimbursement claims against Defendants to be litigated individually through the arbitration process. The parties, through counsel, have negotiated individual settlements for each of these drivers, for which they seek approval here. The parties then negotiated and drafted a "template" settlement agreement that incorporated each Delivery Driver's damages, attorneys' fees, and date of settlement. A copy of each executed settlement agreement was filed previously. *See* Doc. 12-1 to 12-8. The parties represent to the Court that each of these settlement agreements contains materially the same non-monetary terms—the only differences between them is the amount paid to each driver.

**3. Summary of Delivery Drivers' Claims and Total Possible Damages**

Defendants provided Delivery Drivers' Counsel with summary data and records related to the miles driven by, and reimbursement payments, made to each of the Delivery Drivers throughout the time period relevant to their claims. Using the miles driven and reimbursement figures for each Delivery Driver, the parties were able to calculate the amount each Delivery Driver was reimbursed per mile. From there, Plaintiffs' Counsel used an approximate IRS standard business mileage rate of $.55 per mile[1] to calculate the alleged approximate damages of each

---

[1] For reference, the IRS standard business mileage rate has varied from $.56 in 2014, $.57.5 in 2015, $.54 in 2016, $.535 in 2017, $.545 in 2018, and $.58 in 2019.

5

Delivery Driver under the Fair Labor Standards Act and (if applicable) Ohio and/or Kentucky wage and hour laws, assuming the IRS standard business rate to be applicable.

In addition to FLSA damages, Delivery Drivers assert they are also entitled to additional damages under state law. Ohio drivers alleged they are entitled to two times their unpaid wages under the Ohio Constitution, Article II, Section 34a, and liquidated damages under the Ohio Prompt Pay Act, O.R.C. § 4113.15. Kentucky drivers alleged they are entitled to liquidated damages under Kentucky law. *See* Ky. Rev. Stat. § 337.385. The applicability of the additional damage amounts would have depended on the arbitrator's decision as to whether liquidated damages were applicable and whether additional damages could be "stacked" on top on one another. *See, e.g., Evans v. Loveland Automotive Investments, Inc.*, 632 Fed. Appx. 496, 498 (10th Cir. 2015); *compare with Chowdhury v. Hamza Express Food Corp, et al.,* No 15-3142 (2d Cir. Dec. 7, 2016) (denying stacking of FLSA and New York Labor Law damages).

As such, under the approximated IRS standard business mileage rate ($.55 per mile), the formula for Ohio delivery drivers' total possible, best-case-scenario recovery would be:

> Unpaid Wages Calculated at $.55 per mile + liquidated damages under the FLSA + treble damages in Ohio Constitution Damages [4 x unpaid wages] + an additional amount under Ohio's Prompt Pay Act.

Likewise, for Kentucky delivery drivers, the total possible best-case-scenario recovery would be:

> Unpaid Wages Calculated at $.55 per mile + liquidated damages under the FLSA + liquidated damages under Kentucky Wage and Hour Law.

In contrast, if it was ultimately determined that Defendants complied with the FLSA and the relevant Ohio and Kentucky laws, Delivery Drivers would not be entitled to anything. Defendants also dispute Plaintiffs' entitlement to liquidated damages and/or state statutory damages.

The resolution of these issues would require the arbitrator, in each case, ruling as a matter of law the IRS standard business mileage rate applies, or it would require a battle of the experts regarding the appropriate "reasonable approximation" of each Delivery Driver's expenses. This would have been a time-consuming and costly exercise, which may very well have led to inconsistent and varying adjudications. There were substantial risks to all parties if the cases were to go forward.

**4. Summary of Settlement Terms**

Each Plaintiff negotiated an individual settlement of their under-reimbursement claims, so the settlements are not identical across the board—they reflect the strength of individual claims and each individual's pain tolerance for litigation. Each settlement is fair, adequate, and reasonable because it provides substantial compensation to the Plaintiffs, and recognizes the risk, uncertainty, and expense of going forward with arbitration. To varying degrees, each Plaintiff received at least or close to their alleged unpaid wages and most received an equal amount (or more) in liquidated damages.

As to original Plaintiffs (Holt, Day, Piercefield, and Papia), the parties agreed to settle this matter for a total of $18,474.81. From this settlement amount, based on Plaintiffs' calculations, the Plaintiffs will be paid 2.5x their alleged unpaid wages, calculated at the approximate IRS standard business mileage rate of $.55 per mile. As such, Holt will receive $2,300.09, Day will receive $259.78, Piercefield will receive $5,797.38, and Papia will receive $1,250.57. The settlement also recognizes that the FLSA is a "fee-shifting" statute. In addition to the amounts paid to the original Plaintiffs, Defendants will pay attorneys' fees in the amount of $7,167.00, and costs in the amount of $1,700.

As set forth in the Settlement Agreements filed in Doc. 12, the remaining Delivery Drivers settled on the following terms:

| Name | Est. Miles Driven | Est. Mileage Paid | Rate per Mile | Alleged Unpaid Wages Assuming $.55 per mile liability rate (before any damages) | Settlement Amount to Driver | Attorney's Fees |
|---|---|---|---|---|---|---|
| 1. Brandon Barekman | 4,239.95 | $1,257.06 | .30 | $1,074.91 | $2,687.29 | $2,000.00 |
| 2. Joshua Duncan | 9,978.27 | $2,686.34 | .27 | $722.95 | $1,908.59 | $2,000.00 |
| 3. Chaz Jones | 9,805.27 | $3,208.55 | .33 | $349.89 | $923.71 | $2,000.00 |
| 4. Katrina Voorhees | 14,327.29 | $4,627.45 | .32 | $3,252.56 | $7,945.76 | $2,000.00 |
| 5. Dorothy Lorenz | 3,119.94 | $957.78 | .31 | $758.22 | $1,895.47 | $2,000.00 |
| 6. Dylan Huth | 13,628.99 | $4,467.35 | .33 | $3,028.59 | $7,001.73 | $2,000.00 |
| 7. Bailey Vannelli | 3,659.17 | $1,612.15 | .44 | $38.28 | $101.07 | $2,000.00 |
| 8. Rachel Vineyard | 9,058.04 | $2,875.13 | .32 | $2,106.79 | $5,266.97 | $2,000.00 |
| 9. Holly Chenault | 11,713.88 | $4,509.96 | .39 | $1,934.75 | $4,314.49 | $2,000.00 |
| 10. William Bailey Jr. | 6,707.74 | $1,905.25 | .28 | $1,784.01 | $2,953.27 | $2,000.00 |
| 11. William Alsup | 9,482.12 | $2,224.64 | .23 | $2,990.53 | $7,476.32 | $2,000.00 |
| 12. Michael Sexton | 66,644.24 | $17,545.82 | .26 | $19,108.51 | $40,251.75 | $2,000.00 |
| 13. Whitney Kilgore | 11,256.59 | $3,119.35 | .25 | $3,071.76 | $7,679.41 | $2,000.00 |
| 14. Frank Ellman | 18,971.69 | $7,141.06 | .37 | $3,293.38 | $7,000.00 | $2,000.00 |
| 15. Samuel McIntosh | 12,777.26 | $2,876.68 | 0.23 | $4,150.81 | $8,310.63 | $3,300.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 16. Alex Fechtelkotter | 27,863.49 | $7,051.87 | 0.27 | $8,273.05 | $14,331.07 | $5,515.54 |
| 17. David Stammer | 9,480.00 | $2,556.83 | 0.27 | $2,657.17 | $4,650.05 | $3,300.00 |
| 18. Josh Bailey | 11,117.59 | $4,122.97 | 0.37 | $1,991.70 | $5,477.19 | $3,300.00 |
| 19. Daniel Vickers | 31,276.64 | $8,326.14 | 0.27 | $8,876.01 | $13,655.35 | $5,177.67 |
| 20. James Hurtt | 3,930.01 | $773.30 | 0.20 | $1,388.21 | $2,429.36 | $3,300.00 |
| 21. Shawn Watson | 16,443.56 | $4,577.32 | 0.28 | $4,466.64 | $11,488.83 | $4,094.44 |
| 22. Eric Seigneur | 39,929.91 | $11,440.51 | 0.29 | $10,520.94 | $17,449.93 | $7,724.97 |
| 23. Scott Davis | 21,142.83 | $6,100.61 | 0.29 | $5,527.14 | $13,819.87 | $2,000.00 |
| 24. Allyson Leavitt | 2,066.33 | $668.33 | 0.32 | $468.15 | $1,170.00 | $1,500.00 |
| 25. Paul Elliott | 2,808.61 | $755.43 | 0.27 | $789.39 | $2,000.00 | $2,000.00 |
| 26. Todd Rush | 19,425.91 | $5,071.07 | 0.26 | $5,613.18 | $5,600.00 | $2,000.00 |
| 27. Jason Gruener | 22,001.59 | $7,231.47 | 0.33 | $4,869.40 | $4,003.87 | $2,000.00 |
| 28. Brandon Wagner | 39,558.34 | $10,053.89 | 0.25 | $11,703.11 | $13,703.11 | $5,581.55 |
| 29. Stephen Eckstein | 18,695.47 | $4,520.19 | 0.24 | $5,762.32 | $8,146.47 | $3,073.23 |
| 30. Ryan Miles | 11,897.57 | $3,351.42 | 0.28 | $3,192.244 | $6,000.00 | $2,000.00 |
| 31. Brandon Browning | 24,359.66 | $6,832.47 | 0.28 | $6,565.34 | $12,104.52 | $4,402.26 |
| 32. Rebecca Deaton | 61,331.02 | $18,930.30 | 0.31 | $14,719.44 | $13,735.21 | $5,867.10 |
| 33. Bobby Mosely[2] | 9,244.81 | $3,165.99 | 0.34 | $1,918.67 | $3,033.34 | $1,966.66 |
| 34. DeEric Avery | 4,333.37 | $953.43 | 0.22 | $1,429.92 | $2,359.37 | $2,000.00 |
| 35. Michael Roberts | 26,817.32 | $7,239.62 | 0.27 | $7,509.91 | $9,509.91 | $3,754.95 |

---

[2] In the Mosley, Philhower, and Knight matters, Defendants did not differentiate between damages and attorney's fees. Pursuant to their representation agreement, Plaintiff's counsel was entitled to 1/3 of the settlement amount plus costs.

| 36. Samantha Philhower | 10,434.98 | $3,476.26 | 0.33 | $2,262.91 | $3,033.34 | $1,966.66 |
| 37. Jarvis Tolliver | 6,496.25 | $2,645.62 | 0.41 | $927.32 | $1,200.00 | $1,200.00 |
| 38. Brittany Knight | 5,696.44 | $1,813.82 | 0.32 | $1,319.22 | $3,166.67 | $2,033.33 |

Pursuant to their contingency fee agreement with their counsel, the Delivery Drivers will pay up to 1/3 of their damages amount in attorneys' fees, depending on the circumstances. Any amount of attorneys' fees agreed to separately from the damages amount will reduce the amount of attorneys' fees deducted from the damages amount. The parties' settlement agreements were filed previously in Doc. 12-1 to Doc. 12-8).

From Defendants' perspective, the settlement was agreed upon to avoid the significant cost associated with proceeding with arbitration in the AAA, which involved an initial filing fee of $1,900 and an administrative fee of $750 for a total of $2,650 before the individual arbitrators' s fees for the process.[3] Furthermore, each agreement expressly includes a provision stating that Defendants are not admitting to wrongdoing or liability:

> Non-Admission of Wrongdoing: Claimant and Defendants agree that this Agreement is made solely for the purpose of compromising disputed claims and avoiding the costs and expense of further litigation. Nothing contained herein shall constitute an admission of wrongdoing or liability by either party, which liability is expressly denied. Neither the fact, terms or performance of this Agreement may be used as in any other proceeding involving Defendants, except in a proceeding to enforce its terms.

**5. The Standard for Settlement Approval**

When a current or former employee alleges a violation of the FLSA, either the Secretary of Labor must oversee the payment of unpaid wages, or if the employee brings a private action and the parties settle the matter, a district court may enter a stipulated judgment after evaluating the

---

[3] https://www.adr.org/sites/default/files/Employment_Fee_Schedule.pdf

parties' settlement terms for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982); *see also Vigna v. Emery Federal Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *2 (S.D. Ohio 2016); *Gentrup v. Renovo Serv., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio 2011). In evaluating an FLSA settlement and, presumably, an Ohio law wage and hour settlement (because the same considerations apply), the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012); *quoting Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010). The Court must ensure that the settlement is the product of a bona fide dispute, is fair, reasonable, and adequate, and was reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

### 5.1. The settlement is the product of a bona fide dispute.

The most important factor to consider when evaluating a proposed settlement is Plaintiffs' probability of success on the merits. *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6. In this case, Plaintiffs' success on the under-reimbursement claim was not certain. Both parties could present arguments to support a wide range of reimbursement rates as properly applicable here. Some of those arguments are purely legal in nature (*i.e.*, whether the IRS reimbursement rate applies), but some could require expert testimony to a jury. As it is, Plaintiffs are receiving allegedly unpaid wages, plus some but not all the additional damages they are possibly entitled to. The settlements are the product of a *bona fide* dispute.

### 5.2. The settlement is fair, reasonable, and adequate.

Given the complexity of the legal and factual questions raised, the considerable time and expense required to litigate those questions, and the uncertainty of success, the settlement is fair, adequate, and reasonable. Continued litigation would have required substantial discovery, expense, and likely expert testimony. The settlement provides a benefit to Plaintiffs and avoids the time, expense, and uncertainty of moving forward with their claims through the arbitration process.

**5.3. The nature of negotiations.**

The parties reached the above settlements after numerous discussions, exchanges of information, and several rounds of negotiations. The parties negotiated at arm's length, through a multi-step process.

Defendants provided records of the miles driven and reimbursements paid to each of the Plaintiffs. From there, Plaintiffs' Counsel calculated the damages models discussed above, and counsel for the parties engaged in numerous phone calls, and email communications to arrive at the final settlement amount and terms. Through the parties' efforts, the parties were able to reach the resolutions now presented to the Court. This non-collusive, arms-length process allowed the parties to achieve fair settlement agreements. Given the cost, time, and risk of going forward, the settlements are fair, adequate, and reasonable.

**6. The payment of attorneys' fees is reasonable.**

The Delivery Drivers have entered into contingency fee agreements with their counsel under which Plaintiffs' Counsel is entitled to 1/3 of any award or settlement reached on each driver's behalf. In situations, such as this one, where the settlement involves separate consideration being paid for attorneys' fees, the separate attorneys' fees payments serve to reduce the amount that will be deducted from each of the Delivery Drivers' award amounts under the

12

contingency fee agreement. For example, if a Delivery Driver settles for $6,000 in damages and $2,000 in attorneys' fees, Plaintiffs' Counsel has already received 1/3 of the award amount in fees, and therefore no amount is deducted from the award amount. Attorneys' fees in this case were calculated under the above rubric, unless Plaintiffs' counsel agreed to accept a lesser amount under certain circumstances.

Under the terms of the settlement agreements for the original Plaintiffs, Counsel will receive attorneys' fees of $7,167 and reimbursement of expenses in the amount of $1,700. At the time of settlement, Plaintiffs' Counsel have incurred $7,842 in billable time. Since Settlement, Plaintiffs' Counsel have spent additional time drafting and editing the settlement agreements, in addition to preparing this Motion. Given the substantial benefit this settlement provides to the four minimum wage delivery drivers, Plaintiffs' Counsel is willing to accept a discount on their attorneys' fees. As such, under the circumstances, the attorneys' fee and costs award is reasonable.

For Plaintiffs Barekman, Duncan, Jones, Voorhees, Lorenz, Huth, Vannelli, Vineyard, Chenault, Bailey Jr., Alsup, Sexton, Kilgore, Ellman, Davis, Elliot, Rush, Gruener, Miles, and Avery, Counsel received a flat rate fee of $2,000 paid by Defendants based on value of services rendered—client intake, correspondence with opposing counsel, evaluation and confirmation of mileage and reimbursement data, negotiations, and settlement administration services. For Plaintiffs Leavitt and Tolliver, Counsel received flat rate fees of $1,500 and $1,200, respectively, paid by Defendants based on value of services rendered. The claims of Ms. Leavitt and Mr. Tolliver were resolved early in the negotiation process.

For Plaintiffs Josh Bailey, David Stammer, Samuel McIntosh, and Andrew Hurt, Counsel received a flat rate of $3,000 in attorney's fees and $300.00 in costs for services rendered and the

cost of filing an arbitration action. Notably, these matters were not resolved at the pre-arbitration stage, and demands for arbitration were filed with American Arbitration Association ("AAA"). The parties were then able to reach agreements after the filing of a demand for arbitration.

For Plaintiffs Mosley, Philhower, and Knight Counsel received 1/3 of the settlement plus costs per terms of their agreement. Even after attorney's fees and costs ($300 per Plaintiff for the AAA filing fee) are deducted, by the Delivery Drivers' calculations, Kentucky Plaintiffs Mr. Mosely will receive 1.58 x his alleged unpaid wages; Ms. Philhower will receive 1.34 x her alleged unpaid wages; and Ohio Plaintiff will Ms. Knight will receive 2.40 x her alleged unpaid wages. For Plaintiffs Seigneur, Fechtelkotter, Vickers, Watson, Wagner, Eckstein, Browning, Roberts, and Deaton, counsel received 1/3 of the settlement per the terms of their representation agreement minus attorney's fees and costs paid by Defendants (between $3,300 and $2,000 per Claimant).[4] Even after attorneys' fees are deducted, by the Delivery Drivers' calculations, the Delivery Drivers will receive between .93 and 2.57 times their alleged unpaid wages amount, calculated at the approximate IRS standard business mileage rate.

Plaintiffs' Counsel attorneys' fees and costs are fair and reasonable under the circumstances for the services rendered in this case, and should be approved as articulated in the settlement agreements previously filed in Doc. 12-1 to Doc. 12-8.

**7. Conclusion**

Plaintiffs ask that the Court grant final approval to the parties' Settlement Agreements and, upon Defendants' payment of the settlement funds, dismiss the lawsuit with prejudice.

Respectfully submitted,

---

[4] Claimant's Counsel included the costs of the AAA filing fee for Seigneur, Fechtelkotter, Vickers, and Watson in their 1/3 award, thus allocating an additional $300.00 for each Claimant.

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Biller & Kimble, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff*

## **Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Andrew Kimble*
Andrew Kimble